IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

ADRIAN L. DALEY                                              PLAINTIFF

versus                                    CIVIL ACTION NO. 2:04cv92-KS-MTP

JO ANNE B. BARNHART,
Commissioner of Social Security                            DEFENDANT

REPORT AND RECOMMENDATION

Plaintiff Daley brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act requesting judicial review of a final decision of the Commissioner denying his claim for disability benefits. The matter is now before the Court on the defendant's Motion for an Order Affirming the Decision of the Commissioner [18]. Having considered the pleadings, the transcript of the record and applicable law and being thus fully advised in the premises, the undersigned recommends that the Commissioner's decision be affirmed.

Claiming that he had been unable to work since March 20, 2002, Plaintiff Daley applied for Disability Insurance benefits and Supplemental Security Income (SSI) benefits pursuant to Titles II and XVI of the Social Security Act on May 10, 2002. (Tr. 43-45). His application was denied initially (Tr. 26-34) and upon reconsideration. (Tr. 36-39). On May 8, 2003, the hearing requested by the plaintiff was convened before Administrative Law Judge (ALJ) Nancy Brock. (Tr. 293). The plaintiff, who was represented by counsel, appeared and testified (Tr. 295-305, 310-14) as did Robert Walker, a vocational expert. (Tr. 306-10). Having employed the five-step sequential evaluation process specified in 20 C.F.R. § 404.1520(b)-(f),[1] on September 23, 2003, the ALJ rendered her

---

[1] The five steps focus on
    1) whether the claimant is engaged in substantial gainful activity,
    2) whether the claimant has a severe impairment,
    3) whether the claimant has an impairment that meets or equals an impairment found at 20 C.F.R. Part 404, Subpart P, Appendix 1;

decision that the plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 14-20).  Having taken into consideration the necessity that the plaintiff avoid climbing, kneeling, balancing, crouching, stooping, crawling, overhead reaching and that he should also avoid working at heights or around hazardous machinery, driving and operating machinery due to his medications (Tr. 17), the ALJ based her disability determination in part upon the finding that although the plaintiff is unable to perform his past relevant work, his residual functional capacity (RFC) allows him to perform a range of light work that exists in significant numbers in the national economy. (Tr. 17-19).  Despite the plaintiff's request, the Appeals Council found no reason to review the ALJ's decision, thereby rendering that decision the final decision of the Commissioner. (Tr. 5-7).  Accordingly, the Commissioner's decision is now subject to review by this Court. [2]

      The plaintiff was forty-seven years old at the time of the ALJ's decision.  (Tr. 296).  He had an eighth grade education (Tr. 299) and had done construction work as a framing carpenter during the previous fifteen years.  (Tr. 300).  He suffers from multiple ailments, including degenerative disc disease of the cervical and lumbar spine and degenerative joint disease of the knees (Tr. 15, 261).  He received pain management treatment from Dr. Susi Folse for chronic neck, back, and knee pain from June 20, 2001 until November 5, 2002. (Tr. 261, 263: 13, 16; 265, 283).  His problems were aggravated by a fall in  March of 2002 (Tr. 15, 265: 23-24; 270: 42; 300).  The last day he worked was March 20, 2002 (Tr. 299), and he claims to have become disabled on that date. (Tr. 300).

       By this appeal, the plaintiff contends that the ALJ erred by failing to find that the plaintiff

---

        4) whether the claimant can return to prior relevant work, and
        5) whether there is any work that exists in significant numbers in the national
        economy that the claimant can perform.

[2] As required by 42 U.S.C. § 405(g), the plaintiff instituted this action for review of the decision within sixty days after the Notice of Appeals Council Action, which was dated January 9, 2004.  (Tr. 5).

has a listed impairment, by failing to give sufficient consideration to the subjective aspect of the pain suffered by the plaintiff, by failing to sufficiently credit the plaintiff's treating physician's opinion that he is unable to be gainfully employed, and by failing to consider the side effects of the plaintiff's medications in assessing his residual functional capacity. The Commissioner contends that her decision is supported by substantial evidence in the record and should be affirmed.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to inquiry into whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial the evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames,* 707 F.2d at 164 (citations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988). If that decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617.

## BURDEN OF PROOF

In *Harrell v. Bowen,* 862 F.2d 471 (5th Cir. 1988), the Fifth Circuit detailed the shifting burden of proof that applies to the disability determination:

3

An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled. In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f):

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

2. An individual who does not have a 'severe impairment' will not be found to be disabled.

3. An individual who meets or equals a listed impairment of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Harrell*, 862 F.2d at 475 (citations and footnotes omitted). A finding that a claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the...analysis."*Id.*

## THE FIVE-STEP ANALYSIS IN THIS CASE

The ALJ found at the first step of the sequential analysis that the plaintiff had not engaged

in substantial gainful activity since March 20, 2002. (Tr. 19). At the second step, she found that the plaintiff's degenerative disc disease of the cervical and lumbar spine are severe impairments. However, she did not find that his impairments met or equaled a listed impairment as contemplated by step three. (Tr. 15, 19). Before moving to step four, the ALJ determined the plaintiff's residual functional capacity. She arrived at her conclusion that he retained the capacity for light work with an alternate sit/stand option by considering his ability to lift twenty pounds occasionally and ten pounds frequently along with his ability to sit, stand and/or walk for six hours of an eight-hour work day. (Tr. 17). She also considered his restrictions from climbing, kneeling, balancing, crouching, stooping , crawling or overhead reaching as well as that he should avoid driving and operating machinery and working at heights or around hazardous machinery because of his medications. (Tr. 17). At step four the ALJ found that the plaintiff's past relevant work was outside his then-existing residual functional capacity and, therefore, that he was unable to perform such work. (Tr. 17, 19). At step five, based on the vocational expert's testimony, the ALJ found that the plaintiff retained the capacity for performing work that exists in significant numbers in the national economy and, consequently, that he was not disabled. (Tr. 18, 19).

## THE ISSUES

The plaintiff takes exception first with the ALJ's step three finding that his impairment is not a "listed" impairment. He contends that she should have found that his "degenerative disc disease accompanied with evidence of nerve root compression" [3] comes within the listed impairment for disorders of the spine found at 20 C.F.R. pt. 404, subpt. P, App.1, § 1.04A. To sustain his burden of establishing a listed impairment, the plaintiff "must provide medical findings that support each of the criteria" under the listing. *Selders v. Sullivan,* 914 F.2d 614, 619 (5th Cir. 1990). Although

---

[3] *See* Plaintiff's Brief in Support of Complaint [15] at 6.

5

listing section 1.04 does include degenerative disc disease, to meet the requirements under that section for a determination of *per se* disability, the plaintiff was required to present "evidence of nerve root compression." *See* section 1.04A.  This he did not do.  An MRI of the plaintiff's lumbar spine done on August 13, 2001 showed some bulging of the disks throughout the lumbar area but no protruding discs. (Tr. 240-41).  No nerve root compression was noted.  An MRI of his cervical spine taken on the same day showed mild bulging at C4-5 with suspected "minimal encroachment upon the cervical cord," (Tr. 256-57), but, again, no nerve root compression was noted.  In her deposition testimony, Dr. Folse discussed the MRI findings and described the "multi-level degenerative changes with some mild herniations and bulges" as being consistent with the plaintiff's neck and back complaints. (Tr. 262: 10-11).  No mention of nerve root compression was made.  Given that the crucial element of nerve root compression is not established by the medical evidence in this case, the plaintiff did not carry his step three burden of proof.

With respect to the ALJ's determination of the plaintiff's residual functional capacity, the plaintiff appears to take issue with the ALJ's failure to "give sufficient consideration to the subjective aspect of the pain suffered by Plaintiff."  Brief [15] at 7 ¶ B.  Upon closer inspection, however, it becomes clear that what he really takes issue with is the ALJ's failure to sufficiently credit his complaints of fatigue and drowsiness as side effects of his pain control medications.  In her evaluation of the evidence, the ALJ acknowledges that the plaintiff experiences pain from his neck and back impairments but observes  that the pain "appears reasonably managed with medication." (Tr. 16).  The plaintiff does not disagree with the ALJ's observation as to pain management, just with her discounting its effects: "Although Plaintiff's pain has been, and is being managed by, medications, it is clear from the record and an uncontroverted fact that these 'multiple medications' cause Plaintiff to alternate between total lack of sleep and extreme drowsiness and

6

fatigue." Brief [15] at 7 ¶ B.  According to the plaintiff, despite the absence of reference to the claimed side effects in his doctor's records, the fact that he was taking the medications warrants consideration of the side effects as part of the objective medical evidence.  Reply Brief [20] at 4. However, in light of the fact that the medical records do not evidence the plaintiff's complaints of his medications' side effects, the ALJ's finding that his allegations in this regard are not supported by objective medical evidence is not in error.  (Tr. 16).  This result is not altered by the plaintiff's having testified at the hearing to the drowsiness or inability to sleep associated with the medications: "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled.  As a trier of fact, the ALJ is similarly charged with the responsibility and discretion to determine just what weight to give to conflicting evidence presented at the hearing." *Wingo v. Bowen,* 852 F.2d 827, 830 (5th Cir. 1988) (citations omitted); *see also Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir. 1995) ("The ALJ's duty to investigate does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record.").

     The plaintiff next challenges the ALJ's failure to give appropriate weight to his treating physician's "opinions" as to his inability to work.  He points specifically to Dr. Folse's "To Whom It May Concern" letter dated May 3, 2002 and to her deposition testimony relative to her assessment of the plaintiff on August 13, 2002.  Brief [15] at 9-10.  In the letter Dr. Folse states that "secondary to his multiple medical issues and arthritic changes he is unable to hold gainful employment at this time." (Tr. 217).   In her deposition testimony she confirms that on August 13, 2002, she noted in her records that "employment now or in the near future will be difficult" for the plaintiff and that "he has multiple osteoarthritic changes in his joints, as well, which also limits his ability to hold a full-time job."  (Tr. 269).  According to the plaintiff, had the ALJ given these observations due

7

consideration, she would not have come to the conclusion that the plaintiff was not disabled. Brief [15] at 11; Reply Brief [20] at 5. However, Dr. Folse's opinions are not medical opinions within the meaning of the applicable regulations and are not controlling on the issue of disability: "Some opinions by physicians are not medical opinions, and as such have no 'special significance' in the ALJ's determination. Among the opinions by treating doctors that have no special significance are determinations that an applicant 'is disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart,* 326 F.3d 618, 620 (5th Cir. 2003)(citing 20 C.F.R. § 404.1527(e)). As an additional matter, asked whether she was "aware of any jobs in the economy that Mr. Daley could perform on a sustained basis," Dr. Folse's answer is inconsistent with a contention that he could not work at all. She responded that "voc rehab would be better to answer such a question" and then detailed the restrictions she "would place on Mr. Daley as far as work is concerned." (Tr. 269: 38-40).

Finally, the plaintiff contends that the Commissioner failed to carry her burden of proof at the fifth step of the sequential disability evaluation process, which requires a determination of whether the plaintiff can do work other than work that he had performed in the past. *Morris v. Bowen,* 864 F.2d 333, 335 (5th Cir. 1988). To withstand this challenge, the ALJ's determination that other employment is available to the plaintiff (Tr. 18) must be supported by substantial evidence. This evidence may be provided by the vocational expert's answer to a properly propounded hypothetical. *Id.* at 335, 336. A hypothetical is adequate if it "tak[es] into account all the restrictions reasonably warranted by the evidence." *Domingue v. Barnhart,* 388 F.3d 462, 463 (5th Cir. 2004).

At the hearing, the plaintiff agreed that the restrictions detailed by Dr. Folse in her deposition were the plaintiff's then-existing restrictions. (Tr. 304). The ALJ incorporated those restrictions into her hypothetical to the VE, including that "due to some possible impairment by his medications, he

8

will not be able to drive, operate machinery or climb." (Tr. 307). Based on the hypothetical, the VE opined that the plaintiff could work as a ticket taker, a gate tender and a booth attendant. (Tr. 308). The plaintiff then testified that three of his medications–Duragesic, Xanax, and Lortab–caused drowsiness. (Tr. 310-11). Following the plaintiff's testimony, his attorney asked the VE hypothetically whether an individual whose medication caused drowsiness would be able to perform the identified jobs. (Tr. 313). The VE answered that he would not. (Tr. 313).

The plaintiff claims that the ALJ improperly discounted the limitations resulting from the side effects of his medications and the VE's response to the hypothetical propounded by his attorney incorporating those claimed limitations. Brief [15] at 13; Reply Brief [20] at 5-6. These additional restrictions are not, however, "reasonably warranted by the evidence." At the time that Dr. Folse identified Daley's work restrictions, she certainly knew that Daley was taking the pain medications that he claims caused the debilitating side effects. Her records are replete with specific references to Duragesic, Xanax, and Lortab, both before and after the date he claims to have become disabled, (Tr. 237, 235, 232, 231, 229, 228, 223, 211, 207), but no notations as to their side effects appear. That Dr. Folse did not preclude him from all work but expressed certain of his limitations as being related to his medications suggests that his claimed impairment from these side effects is not as incapacitating as he attested at the hearing. Under these circumstances the ALJ properly relied on the vocational expert's testimony that Daley is able to perform work that exists in significant numbers in the national economy. *See Domingue v. Barnhart,* 388 F.3d 462, 463 (5th Cir. 2004); *see also Morris v. Bowen,* 864 F.2d 333, 336 (5th Cir. 1988)(stating that the ALJ "could rely on portions of the expert's answer without endorsing all of the expert's conclusions").

## CONCLUSION

The Court finds that the Commissioner's decision that the plaintiff's residual functional

capacity rendered him capable of performing a significant range of light work that according to the vocational expert exists in significant numbers in the national economy is supported by substantial evidence. It is therefore the recommendation of this court that the Commissioner's motion be granted and the denial of benefits affirmed.

In accordance with the rules, any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 22nd day of August, 2006.

s/ Michael T. Parker
United States Magistrate Judge